**Francisco Elias GOMEZ–MEJIA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 94–40971**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

July 3, 1995.

Mark E. Jacobs, Dallas, TX, for petitioner.

Janet Reno, Atty., Gen. Dept. of Justice, Teresa A. Wallbaum, Donald E. Keener, William C. Erb, Mark C. Walters, Attys. Civ. Div., Robert L. Bombough, Div., Office of Immigration Litigation, Washington, DC, John B.Z. Caplinger, I.N.S. Dist. Dir., Joseph Aguilar, New Orleans, LA, for respondent.

Before JONES, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Petitioner Francisco Elias Gomez–Mejia ("Gomez–Mejia") appeals a final order of deportation against him by the Board of Immigration Appeals ("BIA"). Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 1977, Gomez–Mejia, a citizen of Nicaragua, joined the Sandinista Army and fought in the insurrection that eventually overthrew Anastacio Somoza, a long-standing dictator of Nicaragua. After the Sandinistas came to power and began to implement their communist regime, a civil war ensued between them and anti-communist groups called "Contras." Between 1982 and 1984, Gomez–Mejia fought against the Contras. He was wounded and hospitalized, but soon was ordered to return to combat. In 1987, Gomez–Mejia was assigned the duty of supplying ammunition to a particular unit. The unit, however, received insufficient or degraded ammunition and suffered twenty-nine casualties as a result. Deemed responsible by his superiors, Gomez–Mejia was incarcerated for several days, during which he was kept in an unheated cell in a semi-nude state, despite the cold weather, and was forced to sleep on the pavement. He was eventually released and absolved of the responsibility for the tragedy that befell his unit. Gomez–Mejia soon deserted the army and hid with his family for several months.

On October 23, 1988, Gomez–Mejia entered the United States unlawfully without submitting to inspection by the Immigration and Naturalization Service ("I.N.S."). Shortly thereafter, formal proceedings were initiated against him. Admitting that the charges against him were true, Gomez–Mejia nonetheless argued that he was a refugee and thereby entitled to asylum. Gomez–Mejia contended that he did not flee Nicaragua because of an undue concern for his own safety, but because of his political opinion questioning the continuing viability of the Sandinista cause and his unwillingness to assist the Sandinistas in their suppression of the peasantry. Gomez–Mejia also testified that he objected, on political grounds, to the Sandinista importation of Cuban and Soviet advisors. Gomez–Mejia then testified that he feared reprisals if deported to Nicaragua. Although in April, 1990 a non-communist, Violeta Chamorro, was elected President, the Sandinistas still wield power in the country. Gomez–Mejia testified that he was particularly fearful of Sandinista military intelligence officers who continue to hold their posts after the Chamorro election. Gomez–Mejia also described how Sandinista officers went to his family home to inquire about his whereabouts and cites to a State Department report which concluded that the Sandinista Army continues to maintain a repressive internal security operation.

On April 3, 1990, the Immigration Judge ("IJ") denied Gomez–Mejia his application for asylum. The IJ found that Gomez–Mejia had not proved the possibility of persecution for one of the enumerated factors in the

Immigration and Nationality Act ("INA"), but had only demonstrated a possibility of prosecution for desertion:

> Having listened to his testimony carefully, it appears to me the only rational basis that he fears to go back has to do with his desertion from the military. He has not indicated that he's likely to be punished or mistreated for his race, religion, nationality, membership in a particular social group or because of his political opinion. Everything hinges on the fact that he deserted the military and left Nicaragua.

The IJ then concluded that Gomez–Mejia was not a refugee:

> [I]t seems that this young man had achieved some level of responsibility in the military and then because of an accident or a mistake, soldiers were killed. He was blamed for it, in whole or in part, and within the military he lost status. It does not appear that he was ever persecuted on account of his race, religion, nationality, membership in a particular social group or because of his political opinion.

> Under the circumstances I find that at the time he left Nicaragua, while he may have been at some risk of being punished for desertion from the military, he was not at risk [of] persecution on account of his race, religion, nationality, membership in a particular social group or because of his political opinion. He was, thus, not a "refugee["] as defined in Section 101(a)(42)(A) of the Act. I further find that at the time of his hearing on the asylum application he did not demonstrate that he was entitled to relief under Section 208(a) on account of a risk of being persecuted for any of those protected reasons.

Gomez–Mejia appealed the decision to the BIA. The BIA found against Gomez–Mejia and entered a final order of deportation against him.

## LAW AND ARGUMENT

■ Section 208(a) of the INA, 8 U.S.C. § 1158(a), provides that an alien may be granted asylum if he is a "refugee." Section 101(a)(42)(A) of the INA, 8 U.S.C. § 1101(a)(42)(A), defines "refugee" as a person who is unable or unwilling to return home because of "persecution or a well-founded fear of persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. The factual findings that an alien is not eligible for consideration for asylum are reviewed "only to determine whether it is supported by substantial evidence." *Castillo–Rodriguez v. I.N.S.*, 929 F.2d 181, 184 (5th Cir. 1991). "We accord deference to the Board's interpretation unless there are compelling indications that it is wrong." *Id.* We have authority to review the decision of the BIA after its *de novo* review, but do not review the decision of the IJ. *Castillo–Rodriguez*, 929 F.2d at 183. Here, however, the BIA affirmed the IJ decision "based upon and for the reasons set forth in that decision," without any additional reasoning. Thus, we must review the IJ decision.

■ Gomez–Mejia first contends that the IJ erroneously held that an individual in the army can never be persecuted because he is in the army. The IJ, however, did not make any such holding. Gomez–Mejia next emphasizes the fact that the Sandinistas are a communist group. He then contends that, historically, communists, such as Joseph Stalin, persecuted anyone suspected of infidelity to the communist regime. The reprisals were always ostensibly taken for apolitical reasons. Gomez–Mejia then argues that the incident involving the twenty-nine deaths was only an excuse used by the Sandinistas to persecute him for his political opinion.

The IJ, however, found that Gomez–Mejia "said that while in the army and in Nicaragua, he never revealed his private opinions concerning the Sandinista government and he said further, that since he arrived in the United States he's not engaged in any political activity and hasn't spoke out against the Sandinistas here." Thus, there is no possibility for persecution on the basis of a political opinion because Gomez–Mejia's political opinion was never revealed to the Sandinistas. Gomez–Mejia neither challenges this finding on appeal nor does he point to evidence of the Sandinistas' knowledge of his

political opinion. Accordingly, we cannot find that the evidence compels the finding that Gomez–Mejia has demonstrated the possibility of persecution based upon one of the enumerated factors in the INA.[1]

## CONCLUSION

For the foregoing reasons, the BIA's decision is AFFIRMED.

Christopher BORDENAVE, Jr., etc., et al., Plaintiffs–Appellees,

v.

INTERMEDICS INTRAOCULAR, INC., Defendant–Appellant.

No. 94–30668

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 6, 1995.

Order Granting Partial Rehearing and Modifying Opinion Aug. 24, 1995.

1. Gomez–Mejia cites *Barraza Rivera v. I.N.S.*, 913 F.2d 1443 (9th Cir.1990), for the proposition that, when an individual evades military service because such service would involve killing condemned by the international community, then the fear of punishment for such an evasion is persecution. But, unlike the circumstances in *Barraza Rivera*, there is no evidence that Gomez–Mejia openly voiced his opposition to killings condemned by the international community and was threatened by the Sandinistas if he refused to participate. *Id.* at 1452. Gomez–Mejia also cites *Matter of A—G—*, 19 I. & N. Dec. 502 (BIA 1987), *aff'd*, 899 F.2d 304 (4th Cir.1990), for the proposition that a disproportionately severe punishment for evasion of military duty may amount to "persecution." However, *Matter of A—G—* held that the punishment must result from one of the five grounds enumerated in Section 101(a)(42)(A), which Gomez–Mejia has not demonstrated.