United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 2, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60614
Summary Calendar

_____

SAMIR HELAL ROFAIL,

                                                        Petitioner,

versus

JOHN ASHCROFT, UNITED STATES
ATTORNEY GENERAL,

                                                        Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
(BIA No. A 40 119 407)
_____

Before REAVLEY, BARKSDALE and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    The petition for review is denied for the following reasons:

    1.  By regulation the Board of Immigration Appeals (BIA) is authorized to affirm

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the immigration judge (IJ) without opinion. 8 C.F.R. § 3.1(a)(7) (2002). We have recently held that this summary affirmance procedure does not deprive this court of a basis for judicial review and does not deprive petitioners of due process. Soadjede v. Ashcroft, No. 02-60314, 2003 WL 1093979, at *3 (5th Cir. Mar. 28, 2003). The panel noted that our own court has a similar summary disposition procedure. Petitioner Rofail does not challenge the validity of the regulation, but argues that our standard of review should be less deferential when the summary affirmance procedure is used. We have never so held, and have instead stated that when the BIA approves the decision of the IJ for the reasons set forth in the IJ's decision and without any additional reasoning, we review the decision of the IJ rather than the BIA. See, e.g., Mikhael v. INS, 115 F.3d 299, 302 (5th Cir. 1997); Gomez-Mejia v. INS, 56 F.3d 700, 702 (5th Cir. 1995). In looking to the decision of the IJ, we have not held that our standard of review changes, and we decline to recognize such a different standard in the pending case.

2. Substantial evidence supports the IJ's decision that Rofail should be removed for willfully misrepresenting a material fact in order to procure admission into the United States under 8 U.S.C. § 1182(a)(6)(C)(i). Rofail does not dispute the materiality of his representation that he was unmarried at the time he entered the United States. To be sure, the record contains much conflicting evidence as to whether Rofail married before or after his arrival in 1986, but the IJ's decision is nonetheless supported by substantial evidence. We note that the IJ's decision rested in considerable measure on his evaluation of Rofail's credibility. "We give great deference to an immigration judge's decisions

2

concerning an alien's credibility." Efe v. Ashcroft, 293 F.3d 899, 903 (5th Cir. 2002).

3.  Rofail's only argument concerning his requests for suspension of deportation and voluntary departure is that "an adverse credibility finding does not necessarily support a conclusion that the witness was lying and therefore lacked the good moral character required for relief from deportation." In Rodriguez-Gutierrez v. INS, 59 F.3d 504 (5th Cir. 1995), we held that a finding that testimony lacked credibility does not necessarily negate a finding of good moral character, because 8 U.S.C. § 1101(f)(6) precludes a finding of good moral character only for "one who has given false testimony," and "[f]alse testimony means knowingly giving false information with an intent to deceive." Rodriguez-Gutierrez, 59 F.3d at 507. As we read the decision below, the IJ did not misunderstand the law, and found that Rofail had knowingly given false testimony with an intent to deceive. The IJ found that Rofail had given false testimony relating to his marriage and that "respondent's tendency to fabricate, embellish, and provide inconsistent information continued throughout his testimony in the various phases of these proceedings." The decision goes on to state that Rofail "obtained his lawful permanent resident status by fraud," that his "persistent denial of the earlier marriage is patently implausible," that he had "deliberately misrepresented" information on his resume and inadvertently included the same information on his suspension application, and that this conduct indicated a "willingness to fabricate information when he perceives it as being in his own interests." The IJ summed up his perceptions as follows:

> In point of fact, fraud permeates respondent's entire presence in the United

3

States.  Respondent's residence began as a fraud when he entered the United States as an unmarried son.  Even assuming the Court were to accept respondent's claim that he was actually unmarried and only engaged at the time of his entry – a claim that the Court has already rejected – then, within three weeks of respondent's arrival in the Unites States he is found to be attempting to perpetrate a different fraud on the Immigration Service by identifying, what he is now claiming as his fiancé, as his wife on the I-130 filed in April of 1996.  Based on our overall assessment of respondent's demeanor during the [course] of these proceedings, fraud is still very much a part of his personality.

PETITION DENIED.